# MARCH 28, 1945

LOUIS BLACKMON V. THE STATE.

No. 23048. Delivered January 31, 1945.
Rehearing Denied March 28, 1945.

242

The opinion states the case.

*J. R. Creighton,* of Mineral Wells, for appellant.

*Sam Cleveland,* District Attorney, of Stephenville, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was charged with the unlawful killing of Lawrence Bingham, and by the jury convicted of murder with malice and given twenty-five years in the penitentiary.

The facts show that appellant cut Laurel Tyrrell and killed Lawrence Bingham in the same difficulty. The State's testimony shows a drunken killing, with little, if any, motive being proven. Appellant contended that the above injured parties were trying to rob him, and that he cut them in defense of himself while they were beating him.

The three parties were drinking together at the same table in the Stag Club in Mineral Wells for some time. Eventually the three went out the back door of this club to a toilet close by, and while outside the club the killing took place, appellant using a knife with a three-inch blade and a four-inch handle, seven

inches overall. Laurel Tyrrell testified that as he was going out the door of this club appellant pushed him off balance against the door and began cutting him with a knife, and finally got him down and continued to cut him, and threatened to kill him; that the last time he saw appellant in this difficulty the deceased came out of the toilet towards appellant, the witness going back into the club. Deceased's body was found some two hundred feet away from the back door of the club, and a trail of blood leading back to near such back door. Appellant contended that he started out of the back door to the club in front of the two soldiers; that when they got out near the toilet they demanded his money, and began to beat him over the head with clubs, sticks and fists; that they knocked him down and jumped on him and kicked him; that he got out his knife and tried to cut them aloose; that finally he got loose from them and was so addled from his beating that he did not know where he was, nor what he was doing. Sometime thereafter, however, he was arrested by officers, at which time he asked them not to put him in jail, he would make a bond, and that "they tried to rob me."

Bill of exceptions No. 1 complains of the State propounding to Sheriff Edmondson the following question: "State whether or not you are able to say whether or not he (defendant) is of average strength for a man of that size, weight and age?" To which the witness answered: "Yes, he is." This was objected to as "a conclusion and deduction and not a fact, and the opinion of the witness as a layman and not an expert, highly prejudicial, inflammatory, a deduction and a conclusion arrived at from facts."

This testimony was given prior to appellant's appearance upon the witness stand, at which appearance appellant detailed his physical disabilities relative to being subject to asthma, and a shoulder that seemed to give him some trouble at times, neither disability affecting him at the time of this encounter; the sheriff testifying that he had known appellant for quite awhile, and had seen him in combats.

The jury had the same ability as the witness Edmondson to judge appellant's appearance, and the statement relative thereto could have been useful to this court at least in judging thereof from the record. We do not think such a statement so made by the sheriff could have had any influence upon the trial in any way, and see no error in allowing such to be made at the time it was made, that is before it was shown that appellant would take the witness stand.

Bill of exceptions No. 2 relates to the introduction of a knife found by the officers on appellant's person, the objectionable part of this testimony being that it was testified that the knife had fresh blood on it. How much or how little is not shown, but the introduction of same was objected to as calculated to influence the minds of the jury and was repetitious, there being no contest relative to the use of the knife and its size and dimensions. The fact that the knife had blood on it at the time of its introduction was a circumstance going to show that its owner or possessor had cut something with the knife and drawn blood therewith, and we think it was admissible to fasten such cutting upon appellant, he not having taken the witness stand at such time. We see no error shown by such bill.

Bill of exceptions No. 3 relates to the State's attorney eliciting from a military policeman the fact that he saw the witness Tyrrell who was also cut in the same affray, the objection being as to the fact that the witness Tyrrell was cut, as well as what Tyrrell said. The bill does not show what Tyrrell said, but merely states that the military policeman was permitted to testify as to the statements made by Tyrrell. We cannot know from this bill whether such statements were objectionable or not, and overrule this bill.

Bill of exceptions No. 4 complains because of the fact that Dr. James Welch was permitted to answer that a knife the size of the one taken off the person of appellant in the hands of a man of average strength, the size, age and weight of appellant, was "an instrument capable of producing death or serious bodily injury when used upon the human body of another." To this question the witness answered that such a knife was capable of producing death or serious bodily injury. The objection to such question was directed to the phrase "a man of average strength," it being a fact not being established by proper proof that appellant was a man of average strength. Appellant's objection to the testimony of Sheriff Edmondson, as shown in bill of exceptions No. 1, was primarily based upon the fact that the sheriff was not an expert or a doctor, and any answer on his part as to appellant being a man of average strength would be but a conclusion and deduction and not a fact. In bill No. 4 the witness was a doctor and doubtless an expert, and appeared upon the stand prior to appellant having testified, and we see no more reason for excluding this expert's testimony than in excluding that of the sheriff relative to appellant's appearance.

Bill of exceptions No. 5 relates to the asking the witness Dr.

James K. Welch if he had occasion at that time, and on the same date, to see and examine Laurel Tyrrell, and the witness answered, over the objection of appellant, that he found wounds on the body of Laurel Tyrrell; that the wounds were on his right side, on his right hip; these were penetrating wounds about the same width and size; were made with the same or similar instrument. Appellant objected to this proof for the reason that it involved the injury of another person, was an attempt to prove another and different offense inflammatory and prejudicial to the rights of the defendant. We think the assault upon Tyrrell was a part of the transaction in which Bingham, the deceased, met his death, was res gestae, thereof, and same was also testified to by Tyrrell in detail. It was also shown by appellant's testimony as follows:

"Now, the man on my right, I struck twice; and the man on my left over there, I struck a number of times with that knife.

"Now which one of them it was, the man on my right or the man on my left, that demanded my purse; it was the one on my left, and that then would be Tyrrell, the only one that I have ever seen since to know him."

We see no error reflected in such bill.

Appellant's bill No. 6 complains because of the trial court allowing W. H. Bounds, a soldier policeman, to testify what Laurel Tyrrell told the witness immediately after the said Tyrrell came back into the Stag Club after Tyrrell had been cut. It is shown that this witness saw Tyrrell just as he came in from the back door, bleeding and very nervous, and he immediately walked to Tyrrell, who told witness that he had been cut by a civilian who had been seated at the table with Tyrrell, a large man. The same testimony was given by peace officers unobjected to, and also seems to have been given, in substance, by appellant himself. It was admissible as res gestae, being shown to have been immediately after the cutting, which happened about ten feet outside the back door of the Stag Club, it being the same transaction in which Bingham lost his life. See Branch's Crim. Law, Sec. 341, in which it is said: "State may show that immediately after or simultaneous with the shooting of deceased, defendant shot another person, and may show the details of both shootings; admissible as res gestae, and as showing defendant's state of mind," citing numerous cases.

Perceiving no error shown herein, the judgment is therefore affirmed.

## ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant's motion for rehearing urges no matter not heretofore discussed.

We have again reviewed the entire record and remain convinced that reversible error is not reflected by the record.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.